1

2

3

4

5          **UNITED STATES DISTRICT COURT**

6          **EASTERN DISTRICT OF WASHINGTON**

7    RALPH PEDROZA,                    No. 1:15-CV-3145-MKD

8              Plaintiff,              ORDER DENYING PLAINTIFF'S
                                       MOTION FOR SUMMARY
9         vs.                          JUDGMENT AND GRANTING
                                       DEFENDANT'S MOTION FOR
10   CAROLYN W. COLVIN,                SUMMARY JUDGMENT

11   Acting Commissioner of Social Security,   ECF Nos. 15, 19

12             Defendant.

13        BEFORE THE COURT are the parties' cross-motions for summary

14   judgment. ECF Nos. 15, 19. The parties consented to proceed before a magistrate

15   judge. ECF No. 6. The Court, having reviewed the administrative record and the

16   parties' briefing, is fully informed. For the reasons discussed below, the Court

17   denies Plaintiff's motion (ECF No. 15) and grants Defendant's motion (ECF No.

18   19).

19

20

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shineski v. Sanders*, 556 U.S. 396, 409-410 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i);

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c); 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

the claimant's "residual functional capacity."  Residual functional capacity (RFC),

defined generally as the claimant's ability to perform physical and mental work

activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the

analysis.

At step four, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing work that he or she has performed in

the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).

If the claimant is capable of performing past relevant work, the Commissioner

must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f).

If the claimant is incapable of performing such work, the analysis proceeds to step

five.

At step five, the Commissioner considers whether, in view of the claimant's

RFC, the claimant is capable of performing other work in the national economy.

20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination,

the Commissioner must also consider vocational factors such as the claimant's age,

education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v);

416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

404.1520(g)(1); 416.920(g)(1).  If the claimant is not capable of adjusting to other

1    work, analysis concludes with a finding that the claimant is disabled and is

2    therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

3        The claimant bears the burden of proof at steps one through four above.

4    *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

5    step five, the burden shifts to the Commissioner to establish that (1) the claimant is

6    capable of performing other work; and (2) such work "exists in significant

7    numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.920(c)(2);

8    *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

9                                    **ALJ's FINDINGS**

10       Plaintiff applied for Title II disability insurance benefits and Title XVI

11   supplemental security income on August 27, 2012, alleging onset beginning May

12   12, 2007.  Tr. 12, 196, 203.[1]  The applications were denied initially, Tr. 80-81, and

13   upon reconsideration, Tr. 82-83.  Plaintiff appeared for a hearing before an

14

15   _____

16   [1] The ALJ identifies August 27, 2012 as the Plaintiff's application date.  Tr. 12.

17   The applications for benefits are dated September 5, 2012.  Tr. 196, 203.  It

18   appears Plaintiff may have begun his application on August 27 and completed it on

19   September 5, 2012, but it is of no consequence to the ultimate decision regarding

20   eligibility for benefits.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 6

administrative law judge (ALJ) on November 25, 2013. Tr. 31-61. On February 27, 2014, the ALJ denied Plaintiff's claim. Tr. 9-30.

As a threshold issue, the ALJ found that Plaintiff met the insured status requirements of the Act with respect to his disability benefit claim through September 30, 2010. Tr. 14. At step one, the ALJ found that Plaintiff engaged in substantial gainful activity in January 2008, June through July 2008, June 2009, and August through September of 2009. Tr. 15. At step two, the ALJ found Plaintiff suffers from the following severe impairments: lumbar spine spondylosis with facet arthrosis; obesity; borderline intellectual functioning; affective disorders variously diagnosed as depression and mood disorders; posttraumatic stress disorder; personality disorders variously diagnosed as antisocial personality disorder and personality disorder not otherwise specified with antisocial and borderline features; and a history of polysubstance dependence, in remission. Tr. 15. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. Tr. 15. The ALJ then concluded that the Plaintiff has the RFC to perform medium work, with additional limitations. Tr. 18. At step four, the ALJ found Plaintiff can perform past relevant work as a vegetable II farm worker. Tr. 23. Alternatively, the ALJ proceeded to step five and found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs in significant numbers in the

national economy that Plaintiff could perform, such as industrial cleaner, lumber

sorter,[2] and stores laborer.  Tr. 23-24.  On that basis, the ALJ concluded that

Plaintiff is not disabled as defined in the Social Security Act.  Tr. 25.

On July 21, 2015, the Appeals Council denied review, Tr. 1-6, making the

ALJ's decision the Commissioner's final decision for purposes of judicial review.

*See* 42 U.S.C. § 405(g); 20 C.F.R. § 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

him disability income benefits under Title II and supplemental security income

under Title XVI of the Social Security Act.  ECF No. 15.  Plaintiff raises the

following issues for this Court's review:

1.  Whether the ALJ had a duty to order a consultative examination to further

develop the record;

2.  Whether the ALJ properly weighed the medical opinion evidence;

3. Whether the ALJ ought to have considered whether Plaintiff met Medical

Listing 12.03; and

---

[2] The ALJ's decision reads "lumbar sorter."  Tr. 24.  This is a scrivener's error as

the ALJ's reference to the Dictionary of Occupational Titles makes clear.  Tr. 24

(referring to DOT 922.687-074, which describes a lumber sorter).

1    4.  Whether Plaintiff met Medical Vocational Guideline Rule 202.09.

2   ECF No. 15 at 9.

3   **A. Developing the Record**

4    Plaintiff contends the ALJ failed to fully develop the record.  ECF No. 15 at

5   14-17.

6    The gathering and presentation of medical evidence is critical to the fair and

7   effective operation of the system for distributing social security benefits based on

8   disability.  *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).  Although the

9   claimant bears the burden of demonstrating disability, *Bowen v. Yuckert*, 482 U.S.

10  137, 146 n.5 (1987), the ALJ has a duty "to investigate the facts and develop the

11  arguments both for and against granting benefits . . . ."  *Sims v. Apfel*, 530 U.S.

12  103, 110-11 (2000).  This duty, known as the ALJ's duty to develop the record,

13  requires ALJs to "scrupulously and conscientiously probe into, inquire of, and

14  explore for all the relevant facts."  *Higbee v. Sullivan*, 975 F.2d 558, 561 (9th Cir.

15  1992) (quotations omitted).  "An ALJ's duty to develop the record further is

16  triggered only when there is ambiguous evidence or when the record is inadequate

17  to allow for proper evaluation of the evidence."  *Mayes v. Massanari*, 276 F.3d

18  453, 459-60 (9th Cir. 2001).

19   "One of the means available to an ALJ to supplement an inadequate medical

20  record is to order a consultative examination, i.e., 'a physical or mental

examination or test purchased for a claimant at the Social Security

Administration's request and expense.' " *Reed*, 270 F.3d at 841 (citing 20 C.F.R.

§§ 404.1519, 416.919) (brackets omitted).  An ALJ possesses broad latitude in

determining whether to order a CE.  *Id.* at 842.  An ALJ may order an examination

"to try to resolve an inconsistency in the evidence, or when the evidence as a

whole is insufficient to allow him to make a determination or decision on [the]

claim."  20 C.F.R. §§ 404.1519a(b), 416.919a(b).

Here, the ALJ found "the record contains sufficient information regarding

[Plaintiff's] physical and mental health condition to make a decision without

ordering additional examinations . . . ."  Tr. 12.  Specifically, the ALJ noted that

the record contained mental health treatment notes from the Department of

Corrections and Central Washington Comprehensive Mental Health, a

psychological DSHS assessment, and primary care and emergency room records.

Tr. 12.  "Moreover," the ALJ found "the record contains several inconsistencies

that undermine the claimant's credibility.  Thus, input from him during additional

examinations would be questionable."  Tr. 12.

Plaintiff challenges the ALJ's finding, contending the record was not fully

developed.  ECF No. 15 at 16.  Shortly before Plaintiff was released from prison,

Dr. Aoplanalp "HIGHLY RECOMMENDED" a "comprehensive instrument-

supported neurological and intellectual assessment."  ECF No. 15 at 16 (citing Tr.

1  401) (emphasis in original).  Citing *Tonapetyan v. Halter*, 242 F.3d 1144 (9th Cir.

2  2001), among others, Plaintiff contends Dr. Aoplanalp's recommendation

3  established the inadequacy of the record and triggered the ALJ's duty to further

4  develop the record.  ECF No. 15 at 15-16.

5       In *Tonapetyan*, the medical expert found the claimant's medical record

6  confusing and recommended a more detailed report be obtained.  242 F.3d at 1150.

7  Because the ALJ relied on that expert's testimony, the Ninth Circuit held that the

8  ALJ "was not free to ignore [the medical expert's] equivocations and his concerns

9  over the lack of a complete record."  *Id.*, at 1150-1151.  As a result, the Court

10  concluded the ALJ's failure to obtain a more detailed report constituted reversible

11  error.  *Id.*

12       Unlike *Tonapetyan*, the ALJ in the instant case did not rely on Dr.

13  Aoplanalp's opinion.  To the contrary, the ALJ assigned "little weight" to the

14  opinion of Dr. Aoplanalp because his opinion is based on Plaintiff's discredited

15  symptom claims and is inconsistent with Plaintiff's longitudinal treatment history,

16  his performance on mental status examinations (MSEs), his daily activities, and

17  social functioning.  Tr. 22-23.  Plaintiff does not challenge this assessment.  Thus,

18  unlike *Tonapetyan*, the ALJ was free to disregard Dr. Aoplanalp's

19  recommendation, which she did.

20

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 11

1    Plaintiff also suggests the ALJ should have further developed the record if

2   she questioned Dr. Crank's provisional assessment, limiting him to light work.

3   ECF No. 15 at 12, 15 (citing Tr. 558).  In a check-box form, Dr. Crank indicated

4   Plaintiff ought to be limited to light work, but qualified his assessment as

5   preliminary until Plaintiff received an MRI of his lumbar spine and an evaluation

6   by a neurosurgeon.  Tr. 558.  The ALJ discounted Dr. Crank's opinion because it is

7   inconsistent with Plaintiff's "relatively benign physical treatment history, his

8   performance on physical examinations, and his independent daily functioning."

9   Tr. 22.  But it is ambiguity – not inconsistency – that triggers the ALJ's duty to

10  further develop the record.  *See Mayes*, 276 F.3d at 459-60.  After discrediting Dr.

11  Crank's opinion, the ALJ was free to disregard Dr. Crank's recommendation as she

12  did Dr. Aoplanalp's.

13    Plaintiff has not shown an ambiguity or other impediment to proper

14  evaluation of the evidence that would require further development of the record.

15  *Mayes*, 276 F.3d at 459-60.  The ALJ's findings are supported by a reasonable

16  interpretation of the evidence and must be upheld.  *Batson v. Comm'r of Soc. Sec.*

17  *Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Andrews v. Shalala*, 53 F.3d 1035,

18  1039-40 (9th Cir. 1995).

19

20

**B. Medical Opinion Evidence**

Plaintiff faults the ALJ for discrediting the medical opinions of Jeremiah Crank, M.D.; Norman Staley, M.D.; Bart Aoplanalp, Ph.D.; and Mark Duris, Ph.D. ECF No. 15 at 9-13.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id*. at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id*. (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported

by clinical findings." *Bray v. Comm'r, of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

Dr. Kester contradicted the opinions of Dr. Crank, Dr. Staley, Dr. Duris, and portions of Dr. Aoplanalp's opinions. The remaining portion of Dr. Aoplanalp's opinion, that Plaintiff is functionally illiterate, was contradicted by Ryan Donahue, Ph.D. Accordingly, the ALJ was required to offer specific and legitimate reasons supported by substantial evidence to discount these opinions.

### 1.    Dr. Staley and Dr. Crank

Plaintiff contends the ALJ erred in rejecting the medical opinions of reviewing physician Dr. Staley and of treating physician Dr. Crank. ECF No. 15 at 9-13.

In November 2012, Dr. Staley reviewed Plaintiff's medical record, Tr. 83-97, and opined that Plaintiff was functionally limited to lifting 20 pounds occasionally and 10 pounds frequently, which Plaintiff notes is equivalent to light work. Tr. 91; ECF No. 15 at 11-12.

On November 6, 2013, Dr. Crank checked a box on a medical questionnaire, indicating Plaintiff could perform "light work." Tr. 558. Dr. Crank qualified his assessment as provisional until an MRI could be performed of Plaintiff's lumbar and a neurosurgeon could evaluate him. *Id.*

The ALJ discredited Dr. Staley and Dr. Crank's opinions for the "same reasons." Tr. 22. "Based on the [Plaintiff's] relatively benign physical treatment history, his performance on physical examinations, and his independent daily functioning," the ALJ determined Plaintiff is capable of "medium exertional tasks." Tr. 22.

The ALJ found Plaintiff's benign physical treatment history inconsistent with Dr. Staley's and Dr. Crank's opinions. Tr. 22. While both physicians limited Plaintiff to light work, Plaintiff's records from the Department of Corrections show Plaintiff never sought treatment for his back pain. *See generally*, Tr. 306-398. While in prison, he was able to get up and down from his chair and ambulate without difficulty. Tr. 324. Despite alleging an onset date of May 2007, as late as May 2012, he reported "no physical complaints." Tr. 352. In October 2012, after Plaintiff was released from prison, he complained of some lumbar tenderness, which he reported began 20 years ago. Tr. 438-439. In December 2012, he exhibited no symptoms for bone or joint problems or muscle weakness. Tr. 497. In 2013, a lumbar spine x-ray showed spondylosis with facet arthrosis, Tr. 507, but

later that year he reported no orthopedic problems other than some arthritis in his

fingers from prior fractures to his arms and fingers.  Tr. 455.  Plaintiff's

conservative treatment history is a specific and legitimate reason to reject Dr.

Staley and Dr. Crank's extreme limitations.  *Johnson v. Shalala*, 60 F.3d 1428,

1434 (9th Cir. 1995).

The ALJ found Plaintiff's physical examinations inconsistent with Dr.

Staley and Dr. Crank's opinions.  Tr. 22.  While both physicians limited Plaintiff to

light work, physical examinations showed only mildly reduced range of motion in

October 2012.  ECF No. 440.  In December of 2012, his straight leg raise was

mildly positive in his left leg, but otherwise his range of motion was normal.  Tr.

458.  Doctors concluded his upper and lower extremities were normal and

neurologically intact.  Tr. 458-459.  In January 2013, an x-ray revealed spondylosis

and facet arthrosis in Plaintiff's back, Tr. 507, but he exhibited normal flexion,

extension, and rotation.  Tr. 491.  Additionally, tests of Plaintiff's ability to raise

his straightened leg when he was sitting and lying down were both negative.  Tr.

491.  Plaintiff's performance on these physical examinations are inconsistent with

Dr. Staley and Dr. Crank's opinions and constitute specific and legitimate reasons

for discounting those opinions.  *Bray*, 554 F.3d at 1228 (An ALJ may reject a

physician's opinion not supported by clinical findings.).

1    Last, the ALJ found Plaintiff's daily activities inconsistent with the opinions

2  of Dr. Crank and Dr. Staley.  Tr. 22.  The ALJ noted that Plaintiff has no problem

3  taking care of his personal needs.  Tr. 16.  On a typical day, he made breakfast,

4  showered, watched television, and attended any appointments he had, such as

5  Alcoholics Anonymous meetings.  Tr. 16 (citing Tr. 261-264).  He was able to

6  wash dishes, do laundry, and clean his bedroom.  Tr. 262.  He attended church with

7  his girlfriend, reported going to the YMCA two or three times a week, and visiting

8  a friend in a hospital.  Tr. 413-414, 534, 458.  He reported socializing with friends

9  and family, volunteering at church, and visiting family in Boise and California.  Tr.

10  508, 511, 513, 519, 529, 532.  To get around, Plaintiff walked and took the bus,

11  including to return to Washington from Idaho.  Tr. 263, 529.  Plaintiff's daily

12  activities constitute a specific and legitimate reason for rejecting the opinions of

13  Dr. Crank and Dr. Staley.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d

14  595, 600-02 (9th Cir. 1999) (considering an inconsistency between a treating

15  physician's opinion and a claimant's daily activities a specific and legitimate

16  reason to discount the treating physician's opinion).

17    Plaintiff contends the ALJ erred by rejecting their opinions when no

18  physician opined Plaintiff was capable of medium-level exertion.  But, contrary to

19  Plaintiff's contention, Dr. Eugene Kester reviewed Plaintiff's medical record for

20

1  the Social Security Administration and opined that Plaintiff was capable of

2  medium work.  Tr. 72.

3        Plaintiff disagrees with this reading of the record, contending Dr. Kester

4  only assessed Plaintiff's mental capacity.  ECF No. 20 at 2-3 (citing Tr. 69-71).

5  While Dr. Kester signed the assessment of Plaintiff's mental capacity, Tr. 69-71,

6  he also signed the assessment of Plaintiff's vocational factors, indicating Plaintiff

7  could perform work at the medium-exertional level.  Tr. 71-72.  Thus, Dr. Kester

8  offered a contradictory opinion to the opinions of Drs. Staley and Crank.

9        Because Dr. Kester offered an opinion contradictory to Dr. Staley and Dr.

10  Crank, the ALJ could reject their opinions for specific and legitimate reasons.

11  *Bayliss*, 427 F.3d at 1216.  Here, the ALJ considered Plaintiff's treatment history,

12  his performance on physical exams, and daily activities.  Tr. 22.  She found

13  Plaintiff's treatment history was relatively benign and his performance on physical

14  exams and daily activities consistent with medium-exertion work.  Tr. 21-22.

15  Plaintiff does not challenge these reasons.  ECF No. 15 at 9-12.  Accordingly, the

16  ALJ offered specific and legitimate reasons for rejecting Dr. Crank and Dr.

17  Staley's opinions.  *Johnson*, 60 F.3d at 1434 (a plaintiff's conservative treatment

18  history is a specific and legitimate reason to reject physician's opinion); *Bray*, 554

19  F.3d at 1228 (An ALJ may reject a physician's opinion not supported by clinical

20  findings.); *Morgan*, 169 F.3d at 600-02 (considering an inconsistency between a

treating physician's opinion and a claimant's daily activities a specific and legitimate reason to discount the treating physician's opinion).

### 2. Dr. Aoplanolp and Dr. Duris

Plaintiff also assigns error to the ALJ's assessment of Dr. Aoplanolp and Dr. Duris. ECF No. 15 at 12. Plaintiff contends the ALJ erred when she (1) questioned whether he was functionally illiterate and (2) rejected the opinion that he suffered from a "severe kind of psychotic or schizoid condition." ECF No. 15 at 12.

Dr. Aoplanolp diagnosed Plaintiff as functionally illiterate and opined that his illiteracy and memory and concentration problems would interfere with his ability to maintain employment. Tr. 399, 404. Dr. Duris noted that Plaintiff reported to be functionally illiterate, Tr. 560, and diagnosed Plaintiff with borderline intellectual functioning. Tr. 563. Additionally, based on Plaintiff's history, Dr. Duris diagnosed Plaintiff with antisocial personality disorder. Tr. 563. Dr. Duris believed Plaintiff would experience marked limitations in his ability to understand, remember, and persist in tasks by following detailed instructions. Tr. 563.

The ALJ assigned Dr. Aoplanalp's and Dr. Duris' opinions little weight because their opinions were inconsistent with Plaintiff's longitudinal treatment history, his performance on MSEs, his independent daily activities and, instead,

were based on Plaintiff's subjective and discredited reports.  Tr. 23.  This

constitutes a clear and convincing reason for discrediting their opinions.  *Thomas*

*v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the

opinion of any physician, including a treating physician, if that opinion is brief,

conclusory, and inadequately supported by clinical findings."); *see also, e.g.*,

*Bayliss*, 427 F.3d at 1216 (discrepancies between a doctor's own notes and

conclusions constitute a clear and convincing reasons to reject that doctor's

opinion).

Plaintiff assigns error to the ALJ's assessment, specifically contesting the

ALJ's rejection of Dr. Duris and Dr. Aoplanalp's opinion that he is functionally

illiterate.  Dr. Duris did not opine that Plaintiff was functionally illiterate; he

merely noted that Plaintiff "reported history of learning difficulties . . . having

participated in special education," and that he "remains functionally illiterate."  Tr.

560.  Dr. Aoplanalp diagnosed Plaintiff as functionally illiterate.  Tr. 399.  But his

assessment appears entirely based on Plaintiff's reports.  Tr. 402 (Plaintiff "stated

he could not read or write . . . . He remains largely illiterate ('I know the alphabet,

but can't read words or write them')".).

The ALJ discredited these claims based on several inconsistencies.  Tr. 21.

While Plaintiff alleges he is functionally illiterate, he signed the notice of hearing

acknowledgement with no indication he needed the forms read to him; he drives,

1  which requires that he read and write to get a license and the ability to read street

2  signs; and, perhaps most telling, Department of Corrections psychologist Ryan

3  Donahue, Ph.D., indicated Plaintiff "is able to write in English."  Tr. 21 (citing Tr.

4  185, 387).  Because the ALJ properly discounted Plaintiff's testimony – which

5  Plaintiff does not contest – the ALJ is permitted to discount the physicians'

6  opinions based on those discredited claims.  *Tonapetyan*, 242 F.3d at 1149.

7      Plaintiff also contends the ALJ erred in rejecting their opinions that he

8  suffered from a severe kind of psychotic or schizoid condition which impacted his

9  ability to complete a normal workday without interruption.  ECF No. 15 at 12.

10  Plaintiff makes no argument and cites no authority to challenge the ALJ's

11  assessment.  ECF No. 15 at 12.  This Court reviews "only issues which are argued

12  specifically and distinctly in a party's opening brief."  *Greenwood v. Fed. Aviation*

13  *Admin.*, 28 F.3d 971, 977 (9th Cir. 1994).  Because Plaintiff fails to present

14  specific and cogent argument supported by citation to authority, the Court deems

15  his argument waived.  *Id.*

16  **C.  Medical Listing 12.03**

17      Plaintiff assigns error to the ALJ's failure to consider whether he met or

18  equaled Medical Listing 12.03.  ECF No. 15 at 12-13.  Again, Plaintiff presents no

19  argument as to why the ALJ erred or how he met or equaled Listing 12.03, let

20  alone any authorities to support his claim.  This Court will not consider arguments

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 21

not adequately briefed. *Greenwood*, 28 F.3d at 977. Because Plaintiff fails to present specific and cogent argument supported by citation to authority, the Court deems his argument waived. *Id.*

**D. Medical Vocational Guideline Rule 202.09**

Plaintiff contends the ALJ should have approved him for a period of disability commencing when he turned 50 years old. Under Grid Rule 202.09, a claimant is presumptively disabled if:

1. The claimant's physical RFC is limited to no greater than light;

2. The claimant is 50 years old or older;

3. The claimant is illiterate; and

4. The claimant's previous work experience is unskilled or none.

20 C.F.R. Part 404, Subpart P. App. 2, Rule 202.09. But Plaintiff does not meet the requirements of Rule 202.09 because substantial evidence supports the ALJ's findings that Plaintiff is not illiterate and can perform medium work. Accordingly, the ALJ did not err.

**CONCLUSION**

The ALJ's decision is supported by substantial evidence and free of legal error.

**IT IS ORDERED:**

1.     Plaintiff's Motion for Summary Judgment (ECF No. 15) is **DENIED.**

2.      Defendant's Motion for Summary Judgment (ECF No. 19) is

**GRANTED**.

The District Court Executive is directed to file this Order, enter

**JUDGMENT FOR THE DEFENDANT,** provide copies to counsel, and **CLOSE**

the file.

DATED this Wednesday, August 10, 2016.

*s/ Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE